NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0285n.06

Case No. 24-1734

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

MICHIGAN DEPARTMENT OF ENVIRONMENT, GREAT LAKES, AND ENERGY; DANA NESSEL, on behalf of the people of the State of Michigan,

    Plaintiffs-Appellees,

v.

GERALD R. FORD INTERNATIONAL AIRPORT AUTHORITY,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jun 30, 2026
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

OPINION

Before: SILER, GRIFFIN, and MATHIS, Circuit Judges.

**SILER, Circuit Judge.** This case returns in a different posture but with a familiar theme. The Michigan Department of Environment, Great Lakes, and Energy and Michigan Attorney General Dana Nessel, on behalf of the People of Michigan (collectively, the "State"), sued the Gerald R. Ford International Airport Authority ("Airport Authority") in state court over alleged per- and polyfluoroalkyl substances ("PFAS") contamination at and near the Gerald R. Ford International Airport. The Airport Authority first removed the case under the federal-officer removal statute, arguing that Federal Aviation Administration ("FAA") requirements for aqueous film-forming foam ("AFFF") made it a person acting under a federal officer. The district court remanded, and we affirmed. Back in state court, the Airport Authority filed third-party claims against AFFF manufacturers. Those manufacturers removed on their own federal-officer theory.

The district court then severed the State's claims, declined supplemental jurisdiction over them, and remanded them to state court. The Airport Authority challenges each step. We affirm.

## I.

This case returns to this court after an earlier appeal involving the same underlying state-law environmental action. The Airport Authority owns and operates the Gerald R. Ford International Airport in Grand Rapids, Michigan. In September 2023, the State brought two claims under Michigan's Natural Resources and Environmental Protection Act, Michigan Compiled Laws § 324.101 *et seq*. ("NREPA"), against the Airport Authority in Michigan state court.

Count I arises under Part 201, Michigan's environmental cleanup program, and concerns alleged releases or threatened releases of PFAS. The State alleges that the Airport Authority used AFFF during firefighting training, equipment testing, and emergency responses at the Airport. It further alleges that AFFF is a known source of PFAS and that PFAS has been detected at and near the Airport, including in groundwater and nearby drinking-water wells. Count II arises under Part 31, Michigan's water-pollution-control program, and concerns alleged violations of the Airport Authority's National Pollutant Discharge Elimination System ("NPDES") permit.

In October 2023, the Airport Authority removed the case to the Western District of Michigan. It invoked the federal-officer removal statute, 28 U.S.C. § 1442(a)(1), arguing that it acted under the FAA when undertaking the activities that allegedly caused PFAS releases. The district court remanded. The court held that the Airport Authority had not shown that it was "acting under" a federal officer or that it performed the complained-of actions under color of federal office. We affirmed, holding that the FAA's relationship with the Airport Authority was regulatory, not supervisory, and that federal grant conditions tied to regulatory compliance did not establish an

"acting under" relationship. *Mich. Dep't of Env't, Great Lakes, & Energy v. Gerald R. Ford Int'l Airport Auth.*, No. 24-1085, 2024 WL 4867042, at *3–5 (6th Cir. Nov. 22, 2024).

After remand, the Airport Authority filed a third-party complaint in state court against AFFF manufacturers and John Doe defendants. The Airport Authority alleged that the third-party defendants "designed, manufactured, formulated, marketed, promoted, distributed, and/or sold" the contaminating substances. The third-party complaint asserted claims for contribution and cost recovery under Part 201, indemnification, strict products liability based on design defect and failure to warn, negligence, and trespass.

In May 2024, third-party defendants Tyco Fire Products LP and Chemguard, Inc. removed the case to federal court. They invoked § 1442(a)(1), alleging that they acted under the United States military because at least some of the AFFF giving rise to the third-party complaint was manufactured according to military specifications. The third-party defendants then filed a notice of potential tag-along action, seeking transfer to the AFFF multidistrict litigation ("MDL") in the District of South Carolina.[1]

In June 2024, the State moved to sever its claims against the Airport Authority from the Airport Authority's third-party claims against the manufacturers and to remand only the State's claims to Michigan state court. The Airport Authority opposed severance, arguing that the State's claims and the third-party claims involved the same factual and legal issues and that severance would force related claims into separate forums.

---

[1] The AFFF MDL began in December 2018. It centralized actions against AFFF manufacturers involving common factual questions about the toxicity and movement of PFOA and PFOS, the manufacturers' knowledge of those substances' risks, their warnings about AFFF use and storage, and alleged concealment of those risks. *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018). At the time of the district court's severance-and-remand order, the MDL included more than 7,000 cases.

The district court granted the motion. It first rejected the Airport Authority's timeliness objection, explaining that Rule 21 permits severance "at any time" and that the State moved within 30 days of the third-party defendants' removal. It then applied the severance factors identified in *Parchman v. SLM Corp.*, 896 F.3d 728 (6th Cir. 2018). The court recognized the overlap between the two sets of claims. It found that the same-transaction-or-occurrence factor did not favor severance because the source of the alleged PFAS contamination was relevant to both the State's claims and the third-party claims. But the court found that the common-questions, judicial-economy, and prejudice factors favored severance. It reasoned that the third-party claims would require inquiries into arranger liability, manufacturer knowledge, product design, warnings, concealment, and other issues not necessary to resolve the State's direct claims against the Airport Authority. The court also found that the State's claims likely would proceed faster outside the AFFF MDL and that severance would not prevent the third-party claims from being transferred there. The court treated the witnesses-and-proof factor as neutral.

After severing the claims, the district court declined supplemental jurisdiction over the State's claims. The court found that the State's claims substantially predominated because they arose under state law and because the only federal issue supporting the second removal belonged to the third-party defendants. It also found exceptional circumstances and compelling reasons to decline jurisdiction because the State had chosen state court, the case had already been remanded once, and transfer to the MDL would likely delay adjudication of the State's claims. The court therefore remanded the severed State claims while leaving the Airport Authority's third-party claims pending in federal court. The third-party claims were later transferred to the AFFF MDL in the District of South Carolina.

The Airport Authority appealed. The State moved to dismiss the appeal, but we held that this court has jurisdiction under § 1447(d) to review the remand order under 28 U.S.C. § 1447(d) because the case had been removed under § 1442. We also held that this court has jurisdiction over the severance ruling under the collateral-order doctrine.

## II.

### A.

We begin with severance. A district court's severance ruling is reviewed for abuse of discretion. *Parchman*, 896 F.3d at 733. Rule 21 provides that a "court may. . .sever any claim against a party." FED. R. CIV. P. 21. Rule 14 likewise permits any party to move to sever a third-party claim. FED. R. CIV. P. 14(a)(4). *Parchman* identifies several non-exhaustive severance factors, including "whether the claims arise out of the same transaction or occurrence," whether they share "common questions of law or fact," whether severance would promote settlement or judicial economy, whether severance would avoid prejudice, and whether the claims require different witnesses and proof. 896 F.3d at 733 (citation modified). These factors guide the district court's exercise of judgment; they do not displace the broad discretion Rule 21 gives district courts to manage joined claims. *See* FED. R. CIV. P. 21; *Parchman*, 896 F.3d at 733. The question is thus not whether the panel would have severed the claims in the first instance, but whether the district court's decision fell outside the range of reasonable case-management choices.

The Airport Authority's best argument is factual overlap. The State alleges that AFFF use at the Airport released PFAS into the environment. The Airport Authority alleges that the AFFF manufacturers should bear responsibility for the same contamination. Source, causation, and the movement of PFAS through soil and groundwater may matter in both sets of claims. The district

court recognized as much, finding that the same-transaction-or-occurrence factor did not favor severance because the source of the contamination was relevant to both sets of claims.

But overlap is not dispositive. The remaining factors gave the court ample room to sever. The State's claims ask whether the Airport Authority violated Michigan environmental law by causing or allowing PFAS contamination and permit violations. The third-party claims ask whether the AFFF manufacturers must contribute, reimburse, indemnify, or pay damages based on their own conduct in designing, making, marketing, selling, and warning about PFAS-containing foam. Those claims would require proof about manufacturer knowledge, product design, warnings, and concealment—issues not necessary to decide whether the Airport Authority is directly liable to the State.

The district court thus reasonably found that the common-question factor favored severance. It acknowledged that the contribution, cost-recovery, and indemnification claims may share some facts with the State's NREPA claims. But it explained that manufacturer liability as an "arranger" would require a detailed factual inquiry distinct from the State's direct claims against the Airport Authority. The court also noted that Part 201 permits contribution claims "during or following" a civil action and that the indemnification claim would arise only if the State prevailed against the Airport Authority. MICH. COMP. LAWS § 324.20129(3). And it found that the products-liability and tort claims were still more attenuated because they involved facts "wholly irrelevant" to the State's claims.

The district court also reasonably weighed judicial economy and prejudice. It acknowledged that severance might create two proceedings. But it also reasoned that resolving the State's claims first could reduce or eliminate the Airport Authority's need to pursue indemnification or apportionment. And because the legal and factual issues did not "substantially

overlap," the court found that judicial economy would not be "significantly hindered." As for prejudice, the court recognized some speculation in the State's concern that its claims would slow down in the AFFF MDL. But it still found it likely that the State's claims would move faster outside the MDL, especially because the case had not yet been transferred. It also noted that severance would not prevent the manufacturer claims from going to the MDL, "where they could be adjudicated in the context of other like claims." As such, the district court did not abuse its discretion in finding severance appropriate.

The Airport Authority's cases do not compel a different result. It mainly relies on *Defense Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022), and *Sunbelt Corp. v. Noble, Denton & Associates, Inc.*, 5 F.3d 28 (3d Cir. 1993). In each of those cases, severance split claims that the plaintiff had chosen to bring together against multiple defendants. *Def. Distributed*, 30 F.4th at 427; *Sunbelt*, 5 F.3d at 31–34. Here, the State sought to sever its own claims from later-filed third-party claims brought by the defendant against different parties.

Nor did severance defeat the purpose of the AFFF MDL. The severance order did not keep the manufacturer claims out of the MDL. It kept only the State's direct enforcement claims against the Airport Authority—claims the State did not bring against the manufacturers—on the state-court track the State chose. The district court reasonably concluded that the efficiencies of a manufacturer-liability MDL did not require bundling the State's separate enforcement claims with the Airport Authority's third-party claims.

The district court identified the correct standard, credited the Airport Authority's overlap argument, and explained why the balance still favored severance. That was not an abuse of discretion.

**B.**

The district court also acted within its discretion by declining supplemental jurisdiction over the severed state-law claims. A district court's decision to decline supplemental jurisdiction is reviewed for abuse of discretion. *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010). Section 1367 permits supplemental jurisdiction over claims that "form part of the same case or controversy" as claims within the district court's original jurisdiction. 28 U.S.C. § 1367(a). But supplemental jurisdiction remains "a doctrine of discretion, not of plaintiff's right." *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003) (quoting *Baer v. R & F Coal Co.*, 782 F.2d 600, 603 (6th Cir. 1986)). Courts consider "judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Gamel*, 625 F.3d at 951–52. As relevant here, a district court may decline supplemental jurisdiction when state-law claims "substantially predominate[] over" claims within original jurisdiction or when "exceptional circumstances" provide "compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(2), (4).

The Airport Authority says the district court did not say enough. True, its supplemental-jurisdiction discussion was brief. And a court does not exercise discretion when it gives no reason for its decision. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). But the district court did give reasons. Read as a whole, the order explained why the State's claims and the third-party claims required different proof, different legal inquiries, and different litigation tracks. The supplemental-jurisdiction ruling drew from that severance analysis.

After severance, the jurisdictional picture changed. The only federal issue supporting the second removal belonged to the removing third-party defendants, who asserted that they acted under the United States military when manufacturing military-specific AFFF. The State's severed

claims, by contrast, arose under Michigan environmental law. The district court reasonably concluded that those state-law claims should not remain in federal court because of a federal defense asserted by third-party manufacturers in a separate claim stream.

The Airport Authority responds that the State's claims and the third-party claims were part of the same controversy and were "legally and factually" intertwined. That may support the threshold existence of supplemental jurisdiction under § 1367(a). But it does not end the § 1367(c) inquiry. A district court may have supplemental jurisdiction and still decline to exercise it. 28 U.S.C. § 1367(c); *Gamel*, 625 F.3d at 951. The district court could therefore accept some factual overlap while still concluding that the state-law claims predominated or that compelling reasons supported remand after severance.

The Airport Authority also argues that the circumstances identified by the district court were not "exceptional" because they reflected ordinary consequences of removal: forum preference, hardship from changing forums, and possible delay. That argument has force in the abstract. But this case had an unusual procedural loop. The State's claims had already been remanded once after the Airport Authority failed to establish federal-officer jurisdiction. The same state-law claims returned to federal court only because the Airport Authority later filed third-party claims and the third-party defendants removed based on their own asserted government-contractor defense. That posture gave the district court a sound reason to decline jurisdiction after severance.

The Airport Authority's efficiency argument fails for similar reasons. It says remand wastes resources because the State's claims and the third-party claims will proceed in separate forums. But that argument largely repackages its severance challenge. Once the district court permissibly severed the claims, the manufacturer claims could proceed in the federal MDL, while

the State's Michigan-law enforcement claims could return to state court. Section 1367(c) permits that result.

The district court's explanation could have been fuller. But it identified the relevant statutory grounds, tied them to its severance analysis, and relied on the unusual posture of a once-remanded state enforcement action returning to federal court through third-party removal. That was enough under abuse-of-discretion review.

### C.

That leaves the Airport Authority's renewed federal-officer-removal argument. The Airport Authority's lead argument is that the district court should not have remanded the State's claims because the Airport Authority itself could remove under § 1442(a)(1). "We review de novo the district court's determination that it lacked subject-matter jurisdiction and its consequent decision to issue a remand order." *Mays v. City of Flint*, 871 F.3d 437, 442 (6th Cir. 2017) (citing *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404 (6th Cir. 2007)). A private party invoking § 1442(a)(1) must show that (1) it "acted under a federal officer," (2) those actions were "performed under color of federal office," and (3) it "raise[d] a colorable federal defense." *Id.* at 442–43. The first requirement—"acting under"—remains the problem here.

The State first argues that law of the case bars the Airport Authority from relitigating the same "acting under" theory we rejected in the first appeal. Law of the case generally provides that a decision on an issue made at one stage of a case should govern the same issue in later stages. *In re Kenneth Allen Knight Tr.*, 303 F.3d 671, 676 (6th Cir. 2002). The doctrine applies to issues decided "either explicitly or by necessary" implication. *Id.* (quotation omitted). A court may revisit a prior ruling only in limited circumstances, including "substantially different evidence," a "subsequent contrary view of the law is decided by the controlling authority," or a prior decision

that is "clearly erroneous and would work a manifest injustice." *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997).

The prior appeal resolved the same "acting under" issue the Airport Authority raises here. There, the Airport Authority argued that FAA requirements for AFFF, aviation-safety obligations, federal funding, and grant assurances made it a person acting under the FAA. *Mich. Dep't of Env't, Great Lakes, & Energy*, 2024 WL 4867042, at *3–4. We rejected that theory, holding that the FAA's relationship with the Airport Authority was regulatory rather than supervisory and that federal grant conditions tied to regulatory compliance did not establish an "acting under" relationship. *Id.*

Nothing material has changed. The third-party defendants' removal changed how the case returned to federal court, but it did not change the relationship between the Airport Authority and the FAA. Nor did it change the conduct for which the State sued the Airport Authority. And although the Airport Authority now emphasizes grant assurances and § 1653, the prior panel already addressed the grant-assurance theory and held that it failed on the merits even apart from forfeiture. *Id.* at *4.

The Airport Authority responds that subject-matter jurisdiction may be revisited. That is true in the right case. *See Doe v. Univ. of Mich.*, 78 F.4th 929, 940 (6th Cir. 2023). But *Christianson v. Colt Industries Operating Corp.* confirms that law-of-the-case principles still have force when the prior ruling addressed jurisdiction. 486 U.S. 800, 816 n.5 (1988) ("There is no reason to apply law-of-case principles less rigorously to transfer decisions that implicate the transferee's jurisdiction."). The Airport Authority identifies no intervening controlling authority

that changes the "acting under" inquiry, no substantially different evidence about its relationship with the FAA, and no clear error causing manifest injustice.[2]

Law of the case therefore forecloses the Airport Authority's renewed federal-officer theory. Because the Airport Authority cannot relitigate the "acting under" issue, we need not decide whether it satisfies § 1442(a)(1)'s relatedness requirement or whether it has a colorable federal defense.

### III.

We affirm.

---

[2] The Airport Authority's Rule 28(j) letter citing *Chevron USA Inc. v. Plaquemines Parish* does not change that conclusion. 146 S. Ct. 1052 (2026). *Chevron* addressed § 1442(a)(1)'s "relating to" language and held that the federal duty need not have "specifically required or strictly caused the challenged conduct." *Id.* at 1060. That may help the Airport Authority on the second element. But it does not address the first element—whether the Airport Authority was "acting under" a federal officer. 28 U.S.C. § 1442(a)(1). The prior appeal turned on that first element, and *Chevron* does not disturb that holding.